27 P.3d 242 (2001)
STATE of Washington, Respondent,
v.
Nelson ARGUETA, Appellant.
No. 45408-1-I.
Court of Appeals of Washington, Division 1.
July 23, 2001.
As Amended on Grant of Reconsideration October 8, 2001.
*243 Richard Robert Tassano, Gregory Charles Link, Seattle, for Appellant.
Keith Patrick Scully, King County Prosecuting Attorney, Seattle, for Respondent.
AGID, C.J.
Nelson Argueta appeals his conviction of attempting to elude a police officer. The statute under which he was convicted, RCW 46.61.024 (the eluding statute), requires that the signaling officer's vehicle be "appropriately marked showing it to be an official police vehicle." The statute does not define this phrase. We hold that to be "appropriately marked showing it to be an official police vehicle," the signaling officer's vehicle must bear some insignia that identifies the vehicle as an official police vehicle. Because the vehicle the signaling officer was driving in this case did not bear any such insignia, it was not appropriately marked as required by the eluding statute. Thus, we reverse Argueta's conviction because, even though he could have had no doubt that the pursuing vehicle was a police car, we must interpret a statute to give effect to every word and phrase.

FACTS
On the evening of July 23, 1998, Trooper John McAuliffe of the Washington State Patrol (WSP) was on routine patrol in King County. He was in uniform. He was driving a green 1997 Ford Crown Victoria that bore no official decals or other markings to identify it as a state patrol vehicle. The car was equipped with black push bars on the front bumper, which are used to push disabled vehicles to the side of the road. The car was also equipped with several antennas and an exterior spotlight mounted on the driver's door post. The car had numerous emergency lights, visible only when activated: white strobe lights in the parking light area, wig-wag headlights that alternate from left to right and from high to low beam, a red and blue flashing light mounted on the passenger's side of the front dashboard, red strobe lights in the rear parking lights, blue flashing strobe lights in the rear window dash, and an arrow indicator that flashes amber to signal vehicles approaching from the rear to move to the right or left. The car was also equipped with a three-tone siren. The car's license number was 865 WSP; "865" is Trooper McAuliffe's badge number and "WSP" signifies that the car is owned by the Washington State Patrol.
While traveling westbound on Route 520 in that car on July 23, 1998, the trooper saw a pickup truck repeatedly changing lanes, tailgating the cars in front of it and, in McAuliffe's *244 opinion, driving recklessly. Argueta was later identified as driving the pickup. Trooper McAuliffe turned his lights on and off to get other drivers to move out of his way. He did not keep the lights on continuously so Argueta would not become aware of his presence before he was close enough to initiate a traffic stop. Argueta began to drive over the speed limit and continued to change lanes, so Trooper McAuliffe activated the emergency lights and siren continuously. With McAuliffe in pursuit with lights flashing and siren sounding, Arguetta exited Route 520 onto northbound 148th Street. He made a sharp turn into the parking area of a business park, turned into an alley, ran a stop sign, and ended up back on northbound 148th Street. While they were in the parking area, Trooper McAuliffe got close enough to the pickup to read its license plate. While they traveled through the alley, there were no cars separating the pickup and the trooper. Argueta, with Trooper McAuliffe still in pursuit, traveled north a few blocks on 148th Street and then turned right onto a cross street. Then he turned into another parking lot and came to a stop in a parking stall. Trooper McAuliffe's lights and siren were activated continuously from the time he was on Route 520 until Argueta stopped in the parking stall. After he stopped, Argueta got out of the car and raised his hands. Trooper McAuliffe took him into custody.
Argueta was charged with attempting to elude a pursuing police vehicle and driving while under the influence. He was convicted of both charges and sentenced within the standard range. He appealed, arguing that the evidence was insufficient to support his conviction of attempting to elude because the State failed to prove that Trooper McAuliffe's car was appropriately marked.

DISCUSSION
The issue presented is one of pure statutory interpretation. The interpretation of a statute is a question of law.[1] Accordingly, our review is de novo.[2]
The eluding statute provides in part:
Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.[3]
The statute does not define "appropriately marked." Nor does it indicate that a definition or standards set forth elsewhere are incorporated into the statute for purposes of defining that term. The rules of statutory construction require that we give undefined words their common and ordinary meaning.[4] To ascertain the common and ordinary meaning of a term, we may use a dictionary.[5] Because the dictionary provides an adequate and workable definition and is the proper means to interpret nontechnical terms in a statute, we reject the argument that we should apply the requirements of the statute setting forth the marking requirements for government vehicles, RCW 46.08.065 (the marking statute), to determine what makes a police vehicle appropriately marked.[6] Nothing in the eluding statute *245 even refers to the marking statute.[7] Further, the marking statute does not apply to many kinds of police vehicles.[8] Most significantly, the marking statute's requirement that the vehicle have a small decal in the rear window does nothing to assure the driver being pursued that the pursuing vehicle is a police vehicle and not someone impersonating an officer, which is the purpose of requiring appropriate markings. We therefore disagree with the court's holding in State v. Ritts[9] that to be "appropriately marked" for purposes of the eluding statute, a police vehicle must comply with the marking statute.[10]
The dictionary defines "appropriately" as "in an appropriate manner,"[11] and "appropriate" as "specially suitable."[12] "Marked" is defined as "having a mark."[13] "Mark" is defined as "a character, device, label, brand, seal, or other sign put on an article esp. to show the maker or owner, to certify quality, or for identification."[14]
Applying these definitions to police vehicles, we conclude that to be "marked" under the eluding statute, a vehicle must bear some type of insignia that identifies it as a police vehicle. Emergency equipment does not constitute a "mark" under the ordinary dictionary definition of the term. Emergency equipment is a signaling device, not an identifying device. The ordinary meaning of the term "mark" connotes writing or other characters affixed to the vehicle that conveys its identity or ownership, such as a decal bearing the name of the police department to which the vehicle belongs. We therefore hold that to be "appropriately marked" for purposes of the eluding statute, a vehicle must bear an insignia that identifies the vehicle as an official police vehicle.
Our conclusion is supported by another rule of statutory construction, namely, that we will not interpret statutes in such a way that would render a word or provision superfluous.[15] In a provision separate from the one imposing the "appropriately marked" requirement, the eluding statute contains the term "attempting to elude a pursuing police vehicle." A car with flashing strobe lights, headlights flashing from one side to the other and from high to low beam, a flashing red and blue light on the dashboard, and a three-tone siren that is pursuing a civilian vehicle would be understood by a person of ordinary intelligence to be a pursuing police vehicle. So, under the common and ordinary meaning of the term "pursuing police vehicle," Trooper McAuliffe's vehicle would constitute such a vehicle. Were we to conclude that the evidence is sufficient to sustain Argueta's conviction, we would improperly render the "appropriately marked" requirement superfluous because the conviction could be based on the fact that Argueta attempted to elude a "pursuing police vehicle" even though it was not "appropriately marked."
To give meaning to the "appropriately marked" requirement, we must assume that *246 the Legislature intended to require something more than the presence of activated emergency equipment in order to render a police vehicle appropriately marked for purposes of the eluding statute. That "something more" the Legislature required is a "mark," which, under the ordinary meaning of the term, means an insignia identifying the vehicle as an official police vehicle.
Here, it is undisputed that the car Trooper McAuliffe was driving when he signaled Argueta to stop did not bear an insignia that identified it as an official police vehicle. Accordingly, Trooper McAuliffe's car was not "appropriately marked" for purposes of the eluding statute. The evidence was therefore insufficient to support Argueta's conviction, and it must be reversed.
Our conclusion that the evidence was insufficient to support Argueta's conviction is compelled by the language of the eluding statute as interpreted through application of rules of statutory construction. The logic and practicality of this result are, in our view, matters worthy of the Legislature's attention. The eluding statute as presently worded requires the presence of some identifying insignia in order for a vehicle to be appropriately marked. Without it, a defendant cannot be convicted under the statute as it is written.
We reverse Argueta's conviction.
Although the evidence was insufficient to support Argueta's conviction of attempting to elude a police officer, it was sufficient to support a conviction of the lesser-included offense of reckless driving.[16]
Because the jury was explicitly instructed on the lesser-included offense of reckless driving, we reverse Argueta's conviction of attempting to elude a police officer and remand for the entry of judgment on the offense of reckless driving.[17]
KENNEDY, J., concurs.
GROSSE, J., concurs separately.
NOTES
[1] State v. Merritt, 91 Wash.App. 969, 973, 961 P.2d 958 (1998).
[2] State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001).
[3] RCW 46.61.024 (emphasis added).
[4] Merritt, 91 Wash.App. at 974, 961 P.2d 958.
[5] Id.
[6] Under the marking statute, all vehicles owned by the State "must be plainly and conspicuously marked on the lower left-hand corner of the rear window with the name of the operating agency or institution or the words `state motor pool,' as appropriate, the words `state of Washingtonfor official use only,' and the seal of the state of Washington or the appropriate agency or institution insignia, approved by the department of general administration." RCW 46.08.065(2). All vehicles owned or controlled by a county, city, town, or public body must contain "in letters of contrasting color not less than one and one-quarter inches in height in a conspicuous place on the right and left sides thereof, the name of such county, city, town, or other public body, together with the name of the department or office upon the business of which the said vehicle is used." RCW 46.08.065(1).
[7] State v. Trowbridge, 49 Wash.App. 360, 362, 742 P.2d 1254 (1987).
[8] See RCW 46.08.065(1), (3), (4); see also Trowbridge, 49 Wash.App. at 363 n. 3, 742 P.2d 1254.
[9] 94 Wash.App. 784, 973 P.2d 493 (1999).
[10] We note that the court in State v. Refuerzo, 102 Wash.App. 341, 7 P.3d 847 (2000), stated "Refuerzo also relies on the `marking' statute, which applies to the eluding provision." Id., 102 Wash.App. at 346, 7 P.3d 847. The statement was in fact a recitation of what the appellant contended rather than a statement of our opinion. The correct reading of the statement is that Refuerzo contended that the marking statute applies to the eluding statute, not that the court stated it does. Moreover, the issue of whether "appropriately marked" under the eluding statute means marked in accordance with the marking statute, or whether the marking statute otherwise applies to the eluding statute, was not presented in Refuerzo. Even if our statement were interpreted as our opinion, it did not dispose of an issue presented in the case and is therefore dicta which we need not follow. See Stikes Woods Neighborhood Ass'n v. City of Lacey, 124 Wash.2d 459, 463, 880 P.2d 25 (1994).
[11] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 106 (1993).
[12] Id.
[13] Id. at 1383.
[14] Id. at 1382.
[15] See State v. Rodman, 94 Wash.App. 930, 932-33, 973 P.2d 1095 (1999) ("A statute must be construed so that no word, clause, or sentence is superfluous or insignificant.").
[16] See State v. Parker, 102 Wash.2d 161, 164-65, 683 P.2d 189 (1984) (reckless driving is a lesser-included offense of attempting to elude a police officer); RCW 46.61.024; RCW 46.61.500.
[17] See State v. Green, 94 Wash.2d 234-35, 616 P.2d 628 (1980).