[No. 51679-5-I.   Division One.   April 19, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. JULIO CASTILLA, *Appellant*.

8

*Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Mary H.R. Barbosa, Deputy*, for respondent.

¶1 ELLINGTON, A.C.J. — Julio Castilla was a certified nursing assistant. He was convicted of rape for engaging in sexual intercourse with a patient during a treatment session (rape in the second degree). We hold that whether the intercourse occurred during a treatment session was a question for the jury. We reject Castilla's arguments and affirm his conviction. But because the court imposed an exceptional sentence that violated Castilla's Sixth Amendment right to a jury trial, we remand for entry of a sentence within the standard range.

## BACKGROUND

¶2 Cheryl Nelson suffers from significant developmental delays and schizophrenia and functions essentially as a child. Since 1998, she has resided at Chartley House, a facility operated by Seattle Mental Health. In 2002, Nelson had surgery to repair a broken ankle and was sent to North Auburn Rehabilitation and Health Center (NARC) to recover. She arrived May 31. Julio Castilla was employed at NARC as a certified nursing assistant (CNA). He cared for Nelson for part of his shifts on June 1 and 2.

¶3 On June 3, Nelson reported to a nurse that she had been sexually assaulted. Suspicion fell upon Castilla because of the description given by Nelson and the fact he was on duty at the time of the assault. Investigation revealed that the male component of the vaginal swab taken from Nelson matched Castilla's DNA (deoxyribonucleic acid) profile.

¶4 Castilla was charged with second degree rape under the health care provider alternative in RCW 9A.44.050(1)(d), which provides, in relevant part:

A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the

person engages in sexual intercourse with another person . . . [w]hen the perpetrator is a health care provider, the victim is a client or patient, and the sexual intercourse occurs during a treatment session, consultation, interview, or examination.

At trial, Castilla conceded that he was a health care provider,[1] that Nelson was a patient, and that they had sexual intercourse. Castilla's defense was that the intercourse did not occur during a "treatment session," the final element of the crime.

¶5 The jury found Castilla guilty. The court imposed an exceptional sentence, finding that Castilla knew or should have known that Nelson was a particularly vulnerable victim, that Nelson suffered substantially greater mental and physical injuries than typically seen in second degree rape cases, and that the rape violated Nelson's zone of privacy.

## DISCUSSION

*Treatment Session*

¶6 The principal issue here is Castilla's contention that the evidence did not establish that sexual intercourse occurred during a "treatment session." A challenge to sufficiency of the evidence requires us to decide whether any rational juror could have found guilt beyond a reasonable doubt.[2] In this inquiry, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[3]

¶7 The statute defines "treatment" as "the active delivery of professional services by a health care provider

---

[1] RCW 9A.44.010(14) provides, in part: " 'Health care provider' for purposes of RCW 9A.44.050 and 9A.44.100 means a person who is, holds himself or herself out to be, or provides services as if he or she were . . . [a] member of a health care profession under chapter 18.130 RCW." A certified nursing assistant is a health care provider. RCW 18.130.040(2)(a)(xiii).

[2] *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[3] *Id.* (citing *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977)).

which the health care provider holds himself or herself out to be qualified to provide."[4] The jury was so instructed. The statute does not define the phrase "treatment session," but the common and ordinary meaning of "session" is "a period . . . devoted to a particular activity."[5] The question, therefore, is whether the jury could conclude that intercourse occurred during a time when Castilla was delivering services a CNA is qualified to provide.

¶8 The State presented evidence establishing that CNAs at NARC are responsible for "the hands-on care, activities of daily living, dressing, bathing, grooming, [and] assistance with feeding."[6] CNAs are expected to respond to patients who ask for help or who signal a request for assistance with a call button.

¶9 Castilla admits he entered Nelson's room in response to her call of "I need help, I need help."[7] But because Nelson was not assigned to his care for that shift, he argues he was not providing treatment to her under the statute. CNAs at NARC worked in teams, however, and are responsible for assisting patients assigned to their partner's care, as well as those on their own assigned list. Nelson was assigned to Castilla's partner's care at the time of the incident. She had been assigned to Castilla's care the day before. Whether she was on Castilla's list that day was thus immaterial.

¶10 Castilla testified that Nelson had been flirting with him since her arrival and that when she called him into her room, she insisted upon having sex with him and threatened to scream if he refused. He contends this was not a treatment session. The jury, of course, was not required to believe Castilla. But in any case, he testified he entered her room while on duty and in response to her call for help. She

---

[4] RCW 9A.44.010(15).

[5] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2077 (1993); *see also State v. Argueta*, 107 Wn. App. 532, 536, 27 P.3d 242 (2001) (a court may rely on dictionary definitions to give words their ordinary understanding).

[6] Report of Proceedings (RP) (Nov. 19, 2002) at 17.

[7] RP (Nov. 20, 2002) at 117.

told the nurse that after intercourse, he cleaned her and diapered her. A rational trier of fact could find that Castilla was engaging in a treatment session when he responded to Nelson's call, and could reasonably conclude that the intercourse occurred during a treatment session.

¶11 Castilla argues that this approach to the statute is insufficient because the State failed "to prove the sexual intercourse occurred during a period devoted to the active delivery of professional health care services."[8] Essentially, Castilla argues that the sexual interlude was a personal detour from his professional duties and therefore did not occur during a period devoted to the active delivery of professional health care services. This means, apparently, that if professional services are interrupted by a sexual encounter, the intercourse itself does not occur during a treatment session. But under this theory, the only health care providers who could be prosecuted under the statute would be those who claim to engage in intercourse for professional reasons. We are confident that was not the legislative intent, if only because if that were the objective, the legislature had no need to include certified nursing assistants such as Castilla under the definition of health care provider; no nursing assistant could claim such a therapeutic objective.

¶12 We reject Castilla's reading of the statute. The court properly left to the jury the determination of whether the intercourse occurred during a treatment session. The evidence amply supports its finding that it did.

*Exceptional Sentence*

■ ¶13 The court imposed an exceptional sentence based upon the particular vulnerability of the victim. This violated Castilla's Sixth Amendment right to a jury trial. *State v. Hughes*, 154 Wn.2d 118, 136, 110 P.3d 192 (2005). We therefore remand for entry of a sentence within the standard range.

---

[8] Br. of Appellant at 8-9.

¶14 Castilla's conviction is affirmed. His sentence is vacated and we remand for resentencing.

¶15 The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040.

KENNEDY and SCHINDLER, JJ., concur.

Reconsideration denied January 26, 2006.

Review denied at 158 Wn.2d 1013 (2006).