[No. 28310-1-III.   Division Three.   November 18, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL A. NAILLIEUX, *Appellant*.

*Eric J. Nielsen* and *Jennifer M. Winkler* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*James L. Nagle, Prosecuting Attorney*, and *Teresa J. Chen, Deputy*, for respondent.

¶1 SWEENEY, J. — We will review manifest constitutional error even if the appellant did not object or except in the trial court. However, the appellant must show error that is manifest in the record and constitutional in magnitude. Here, the appellant assigns error to the trial court's failure to give a unanimity instruction and to the admission of opinions on whether a tank was approved by the Department of Transportation (DOT). We conclude that there was no manifest constitutional error; indeed, there was no error at all. We conclude that the State failed to properly allege the elements of eluding a police vehicle, and we reverse that conviction. Finally, the State agrees with the appellant's objection to the court's conditions of community custody related to alcohol (possession of alcohol and treatment). We accept that agreement. We, then, reverse in part and remand for resentencing.

## FACTS

¶2 Michael Naillieux drove erratically on a rural road in Walla Walla County, Washington. April Garoutte was a passenger in the car. Deputy Sheriff Ian Edwards tried to stop him. Mr. Naillieux sped away to evade the deputy. The deputy gave chase. Ultimately, Mr. Naillieux jumped from the car and ran, and the car overturned with Ms. Garoutte still in it. The deputy drove to the scene of the rollover and saw Ms. Garoutte sitting by the driver's window. She told the deputy that Mr. Naillieux had been driving but had fled on foot. She said there might be a methamphetamine laboratory in the trunk.

¶3 The deputy called for help. Detective Sergeant Gary Bolster responded. He has specialized training in clandestine laboratories. He searched the car's trunk. And he found a meth lab. It included muriatic acid, Coleman fuel, lithium battery strips, crushed pseudoephedrine tablets, and an air tank of anhydrous ammonia—in short, all the ingredients necessary to make methamphetamine.

¶4 The sergeant later found and arrested Mr. Naillieux. The State charged him with eluding a pursuing police ve-

hicle, manufacturing methamphetamine, possessing methamphetamine paraphernalia, possessing pseudoephedrine with the intent to manufacture methamphetamine, and unlawfully storing anhydrous ammonia.

¶5 The case proceeded to jury trial. The State showed that:

- Mr. Naillieux bought muriatic acid from a landscape supply store in Walla Walla, Washington, on October 16 or 17. Report of Proceedings (RP) at 73-81.

- Around 3:30 p.m. on October 17, Mr. Naillieux picked up Ms. Garoutte at a convenience store in Walla Walla so they could "get high." RP at 118-21.

- They drove to a friend's house, then to a Walgreens drug store in Walla Walla where Mr. Naillieux bought lithium batteries. RP at 121-22.

- Around 5:00 p.m., the couple stopped at Pikes Peak, which is apparently in Oregon. RP at 123-24.

- Mr. Naillieux got out of the car and opened the trunk. RP at 123. Thirty minutes later, he asked Ms. Garoutte to wipe out some Mason jars. RP at 124-25.

- He took the jars to the open trunk after she had wiped them out. RP at 125.

- Mr. Naillieux set some methamphetamine on the car's center console, and Ms. Garoutte snorted it. RP at 125-26.

- Mr. Naillieux then drove around for a long time looking for big tanks in fields. RP at 126-27, 129. He eventually parked the car on a gravel road and got high. RP at 129.

- Ms. Garoutte spotted Deputy Edwards's police vehicle. RP at 130.

- Mr. Naillieux started the car and sped off. RP at 131.

- Shortly thereafter, Sergeant Bolster found the meth lab, including the air tank. He testified the tank was not "a DOT approved container for anhydrous ammonia." RP at 168. No one objected to the testimony.

¶6 The jury was instructed that it had to find Mr. Naillieux unlawfully manufactured methamphetamine in Walla Walla County to find him guilty of manufacturing methamphetamine. Mr. Naillieux did not request a unanimity instruction on the manufacturing charge. The jury was instructed that, to find Mr. Naillieux guilty of unlawful storage of anhydrous ammonia, it had to find Mr. Naillieux's air tank either was not DOT-approved or did not meet certain health and safety standards for anhydrous ammonia. The jury found Mr. Naillieux guilty of all charges.

¶7 The sentencing court did not conclude that any of Mr. Naillieux's current offenses encompassed the same criminal conduct. It calculated an offender score of 9+ for each current offense (except for the misdemeanor possession of drug paraphernalia). The court then ordered that Mr. Naillieux serve a concurrent sentence of 120 months for all offenses except for the eluding offense. For that offense, the court imposed a 29-month sentence that ran consecutively to the 120-month sentence after finding that a standard range sentence was too lenient. The court, thus, ordered an exceptional sentence of 149 months total. The judgment and sentence says Mr. Naillieux stipulated to the sentence. He did not. RP at 300-01. The court also imposed a term of community custody for the manufacture and possession with intent offenses. Conditions of community custody included a ban on alcohol and participation in "alcohol/ drug" treatment. Clerk's Papers (CP) at 56.

## DISCUSSION

ASSIGNMENTS OF ERROR WITH CONSTITUTIONAL IMPLICATIONS

¶8 Mr. Naillieux makes a number of assignments of error here on appeal. They all have one thing in common. None of them was raised in the trial court by objection or exception. That means the trial judge had no opportunity to correct an error, assuming error. Nor did the State have an opportunity to address an objection, by either proposing instructions, asking witnesses additional questions, or any other

means capable lawyers use to address objections and exceptions in the trial court. And yet we are asked to reverse this jury verdict and send the case back for another trial.

¶9 Mr. Naillieux argues that we should review his assignments of error in the first instance because these errors are manifest constitutional errors. Appellant's Br. at 12, 23. He, thus, essentially invites us to review his case de novo. *See State v. Walters*, 146 Wn. App. 138, 144, 188 P.3d 540 (2008) ("We review de novo claims of manifest constitutional error."). The problems this argument presents are spelled out clearly by Judge Marshall Forrest in his thoughtful opinion in *State v. Lynn*, 67 Wn. App. 339, 342-46, 835 P.2d 251 (1992). And given the increasing frequency with which these assignments of error show up in this court, the problems bear repeating.

¶10 We sit as a court of review, which, of course, means that we do not preside over trial proceedings de novo. Our function is to review the validity of claimed errors by a trial judge who presided over a trial. That function assumes that counsel preserve the error by objecting to something the trial judge did or did not do. We do not, and should not, be in the business of retrying these cases. It is a wasteful use of judicial resources. *Id.* at 344; *State v. Bashaw*, 169 Wn.2d 133, 146, 234 P.3d 195 (2010); *State v. Labanowski*, 117 Wn.2d 405, 420, 816 P.2d 26 (1991). And it encourages skilled counsel to save claims of constitutional error for appeal so a defendant can get a new trial and second chance at a not guilty verdict if the first trial does not end in his favor. *Lynn*, 67 Wn. App. at 343. Most errors in a criminal case can be characterized as constitutional. *Id.* at 342-43.

¶11 Mr. Naillieux is entitled to a new trial only if his claimed errors are manifest constitutional errors. RAP 2.5(a)(3); *see Lynn*, 67 Wn. App. at 345 (setting forth four-part manifest constitutional error test). Even if the claimed error is constitutional in nature, we will not review it unless it is also manifest. *Lynn*, 67 Wn. App. at 345. An error is manifest when the defendant shows "the asserted

error had practical and identifiable consequences in the trial of the case." *Id.* " '[M]anifest' means unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed. 'Affecting' means having an impact or impinging on, in short, to make a difference. A purely formalistic error is insufficient." *Id.* (footnote omitted). We conclude that, while Mr. Naillieux's claims of manifest constitutional error might well implicate constitutional due process rights, they are not manifest.

Unanimity Instruction

¶12 Mr. Naillieux contends the trial court should have given the jury a unanimity instruction (an instruction requiring unanimous agreement on the act or acts supporting the elements of the crime of manufacturing) because the State charged one count of manufacturing methamphetamine but alleged three acts that could have constituted manufacturing methamphetamine and one occurred in Oregon. Mr. Naillieux contends the record shows distinct acts, not a continuous course of conduct. He says it shows he collected materials for a meth lab by buying lithium batteries and muriatic acid in Walla Walla. He then manipulated some of the materials by dismantling the batteries and crushing the pseudoephedrine. And, finally, he made methamphetamine in his trunk at Pikes Peak. He maintains that any one of these three acts could constitute manufacturing methamphetamine but that a Washington jury could not find him guilty of the third act because it occurred in Oregon.

¶13 The facts presented to the trial court are the same facts argued here on appeal. The only thing that has changed is Mr. Naillieux's argument. He now argues that his conduct amounted to several separate acts, entitling him to a unanimity instruction. Appellant's Br. at 14-17.

¶14 A trial court must ensure, by instruction or election, that a jury unanimously agrees that the State proved the same act when the State produces evidence of multiple distinct acts and each act could be the crime

charged. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). But neither an instruction nor an election is required if multiple acts are a continuous course of conduct rather than distinct acts. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989); *State v. Petrich*, 101 Wn.2d 566, 571, 683 P.2d 173 (1984). We conclude that is what we have here.

¶15 Mr. Naillieux's objective was to manufacture meth. "Manufacture" means "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container." RCW 69.50.101(p).

¶16 The evidence suggests Mr. Naillieux took a number of steps in Washington and Oregon to prepare and produce meth. He drove around for a few hours buying meth ingredients, at least those he did not already have, and then he made a batch of meth in his trunk. Like in *State v. Fiallo-Lopez*, the fact that Mr. Naillieux's acts occurred at different times and places is outweighed by the commonsense conclusion that the purpose of the acts was to make methamphetamine for Ms. Garoutte and himself. 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). The acts were one continuous course of conduct. *State v. Simonson*, 91 Wn. App. 874, 884, 960 P.2d 955 (1998). It, then, is understandable why no one, including his capable defense counsel, requested a unanimity instruction. Mr. Naillieux was not entitled to one, and the judge would have properly denied the request. *Handran*, 113 Wn.2d at 17; *Petrich*, 101 Wn.2d at 571.

¶17 There was no error here and certainly no manifest constitutional error.

OPINION TESTIMONY—ANHYDROUS AMMONIA TANK

¶18 Mr. Naillieux next argues that the trial court committed a manifest constitutional error by admitting

improper opinion testimony from a State's witness who said the tank in Mr. Naillieux's trunk was not approved by the DOT for anhydrous ammonia.

¶19 Again, there are a number of problems with challenging the sergeant's testimony here on appeal. Thoughtful trial counsel might not have objected because he knew this information was coming in one way or another. And a well-prepared lawyer might have had other good reasons not to object. We do not know. But, if there was an objection, the objection should have been raised at trial so the trial court could have done something about it. We find no manifest error in admitting the sergeant's testimony.

¶20 Sergeant Bolster was asked to explain what he did after he searched the trunk of Mr. Naillieux's car. He said he took the tank out of the trunk and vented it because it was not DOT approved to store anhydrous ammonia:

> The ammonia tank I removed from the trunk of the car. An air tank is not a DOT approved container for anhydrous ammonia. The valves that we find on all of these tanks in clandestine labs have been modified to some degree. The integrity of how well that modification is done is not always the same. And so for safety reasons I took the tank approximately, oh, 50 or 75 yards out into the wheat field that was luckily right there, just west of Miller Road, and I shot the tank with the 223 patrol rifle that I had with me, to vent the tank.

RP at 168. He also testified that an unapproved tank could burst at any time, posing a danger to people nearby. RP at 168-70. When viewed in context, then, Sergeant Bolster's testimony was offered not to opine on an ultimate issue of fact but to explain why he "vented" the tank—it was an immediate hazard to those at the scene.

¶21 Moreover, the testimony did not prejudice Mr. Naillieux even if it was opinion testimony on a material issue of fact. *See State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008) (improper opinion testimony is manifest if it actually prejudiced the defendant). There is no suggestion that the testimony is anything other than fac-

tually correct. No one at trial suggested that the tank was DOT approved or otherwise suitable for storing anhydrous ammonia. And Mr. Naillieux certainly did not request a jury instruction on DOT requirements for these containers.

¶22 We, therefore, conclude that this was not opinion testimony and that there is no manifest constitutional error, even assuming error.

SAME CRIMINAL CONDUCT

¶23 Mr. Naillieux next contends, again for the first time on appeal, that the trial court erroneously failed to find that his convictions for manufacture, possession with intent to manufacture, and unlawful storage of anhydrous ammonia were the same criminal conduct for his offender score.

¶24 A criminal defendant's " 'failure to identify a factual dispute for the [trial] court's resolution and . . . failure to request an exercise of the court's discretion' waive[s] the challenge to his offender score." *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 495, 158 P.3d 588 (2007) (second alteration in original) (quoting *State v. Nitsch*, 100 Wn. App. 512, 520-23, 997 P.2d 1000 (2000)). The defendant in *Shale* waived his challenge to his offender score because he agreed to the score and did not challenge its computation in the sentencing court. 160 Wn.2d at 495. Mr. Naillieux did *not* agree to his offender score, but neither did he challenge it. He also concedes he did not ask the trial court to pass on the same criminal conduct issue. Appellant's Br. at 26. He, then, has waived his challenge to his offender score.

¶25 This issue seems to be much ado about nothing anyway. Mr. Naillieux's relevant offender score and standard sentence ranges would not change even if we accepted his argument and concluded that these crimes should have been treated as the "same criminal conduct." The highest offender score in the sentencing grid is "9 or more." RCW 9.94A.510, .517. And Mr. Naillieux's criminal history alone resulted in an offender score of 10. RP at 304. So his offender score was "9 or more" even before the trial court added points for his current convictions.

NOTICE OF THE ESSENTIAL ELEMENTS OF ELUDING A POLICE VEHICLE

¶26 Mr. Naillieux asserts that the information failed to notify him that eluding a pursuing police vehicle required proof of reckless driving. Again, he did not object to the adequacy of the information in the trial court and this influences the level of scrutiny we bring to bear on the charging document. We liberally construe a charging document challenged for the first time on appeal and consider it valid if, on its face, the allegedly missing elements appear or can be inferred from other words "conveying the same meaning and import." *State v. Kjorsvik*, 117 Wn.2d 93, 108, 812 P.2d 86 (1991); *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). If we find the missing elements, we consider whether the information's vague or inartful language actually prejudiced the defendant. *McCarty*, 140 Wn.2d at 425. If we do not find the missing elements, we presume prejudice and reverse the defendant's conviction. *Id.* at 425-26.

¶27 Mr. Naillieux asserts that the information was defective because it failed to allege two essential elements of eluding a police vehicle—the reckless manner element and the lights and sirens element. The applicable version of the eluding statute indeed requires, in part, that the defendant drive his vehicle in a reckless manner and that the police officer's vehicle be equipped with lights and sirens:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his vehicle to a stop and *who drives his vehicle in a reckless manner while attempting to elude a pursuing police vehicle*, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and *the vehicle shall be equipped with lights and sirens*.

Former RCW 46.61.024(1) (2003) (emphasis added). The information here, then, had to allege these two missing elements and the crime's other essential elements to prop-

erly notify Mr. Naillieux of the eluding charge and to allow him to prepare his defense. *State v. Simon*, 120 Wn.2d 196, 198, 840 P.2d 172 (1992). The information does not contain the words "reckless manner" or "equipped with lights and sirens":

> [T]his information accuses MICHAEL A. NAILLIEUX of the crime(s) of:
>
> . . . .
>
> Count 3: ATTEMPTING TO ELUDE A PURSUING POLICE VEHICLE, RCW 46.61.024, Class C Felony (5 years or fine of $10,000 or both);
>
> . . . .
>
> Count 3: That the said MICHAEL A. NAILLIEUX, in the County of Walla Walla, State of Washington, on or about the 18th day of October, 2008, did fail or refuse to immediately bring his/her motor vehicle to a stop and drove his/her vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle appropriately marked after being given visual or audible signal by a uniformed police officer to bring his/her vehicle to a stop.

CP at 3-4.

¶28 The information instead uses the language of an earlier 1983 version of the eluding statute. *See* former RCW 46.61.024 (1983). The 1983 statute was amended in 2003. LAWS OF 2003, ch. 101, § 1. The words "reckless manner" replaced the phrase "manner indicating a wanton or wilful disregard for the lives or property of others." *Id.*; *State v. Ratliff*, 140 Wn. App. 12, 14, 164 P.3d 516 (2007). This change "remove[d] the willful and wanton standard from [the eluding] statute." *Ratliff*, 140 Wn. App. at 15. And "reckless manner" does not mean a "willful or wanton disregard for the lives or property of others." *Id.* It means "'a rash or heedless manner, with indifference to the consequences.'" *Id.* at 16 (internal quotation marks omitted) (quoting *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005)). We, then, cannot infer "reckless" from "willful and wanton."

¶29 Also in 2003, the phrase "equipped with lights and sirens" replaced the words "appropriately marked showing it to be an official police vehicle" in the eluding statute. LAWS OF 2003, ch. 101, § 1(1). Case law defined an "appropriately marked" police vehicle as a vehicle bearing insignia identifying it as a police vehicle, like a decal with the police department's name on it. *State v. Argueta*, 107 Wn. App. 532, 538, 27 P.3d 242 (2001). Its definition did not include lights and sirens. *Id.* at 538-39. We, then, cannot infer the "lights and sirens" phrase from the "appropriately marked" phrase. The legislature's 2003 amendment added "equipped with lights and sirens." LAWS OF 2003, ch. 101 § 1(1). And we must assume that it did so for a reason. *Lynn*, 67 Wn. App. at 343. We then also will not infer the lights and sirens element from the information's use of the words "pursuing police vehicle."

¶30 The State maintains the information adequately notified Mr. Naillieux of the elements of eluding a police vehicle because it cited the correct statute, RCW 46.61.024. Citing the correct statute, however, is not enough. "[D]efendants should not have to search for the rules or regulations they are accused of violating. . . . [T]he correct rule is that *all* essential elements of an alleged crime must be included in the charging document." *Kjorsvik*, 117 Wn.2d at 101. Indeed, CrR 2.1(a)(1) requires that the information include a "written statement of the essential facts constituting the offense charged" *and* "the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated." The information's citation to the eluding statute, then, did not adequately notify Mr. Naillieux of the eluding charge.

¶31 The information omitted two essential elements of eluding a police vehicle—reckless manner, and lights and sirens. We presume prejudice and therefore reverse Mr. Naillieux's conviction for eluding a pursuing police vehicle. *McCarty*, 140 Wn.2d at 425-26.

## Alcohol-Related Conditions of Community Custody

¶32  Finally, Mr. Naillieux argues that the sentencing court erroneously prohibited him from possessing alcohol and erroneously required that he attend an inpatient or outpatient alcohol/drug program because there is no showing that his crimes are alcohol related. The State agrees. We vacate the conditions that prohibit Mr. Naillieux from possessing alcohol and that require him to participate in alcohol treatment based on that agreement.

## Scrivener's Error

¶33  The judgment and sentence also contains a scrivener's error. It recites that Mr. Naillieux stipulated to an exceptional sentence. He did not, and the State again concedes as much.

## Statement of Additional Grounds

¶34  Mr. Naillieux contends his conviction for manufacturing methamphetamine should be reversed for lack of jurisdiction and insufficient evidence. He bases his contentions on the claim that he committed the crime in Oregon. We have already concluded, however, that the record shows Mr. Naillieux engaged in a continuous course of conduct that occurred at least partly in Washington. We, therefore, reject his contentions.

¶35  Mr. Naillieux also contends a jury, not the judge, should have found the facts supporting his exceptional sentence. We need not address this contention because we have reversed the eluding conviction and its consecutive 29-month sentence that made the overall sentence exceptional. Mr. Naillieux is incorrect in any event. "[A] sentencing judge, not a jury, may find facts to support consecutive sentences." *State v. Vance*, 168 Wn.2d 754, 762, 230 P.3d 1055 (2010).

## Holding

¶36  We reverse the conviction for eluding a pursuing police vehicle. We remand to correct the scrivener's error

and to vacate community custody conditions that prohibit possession of alcohol and require participation in alcohol treatment. We affirm the remaining convictions.

KULIK, C.J., and BROWN, J., concur.