# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74469-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DIANA JOLINE MERRITT, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 21, 2017 |
| | ) | |

2017 AUG 21 AM 9:30
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

LEACH, J. — Diana Merritt appeals her conviction of several counts of mortgage fraud. She contends these convictions should be set aside for three reasons. First, she claims that the statute of limitations is an essential element of each offense that the State failed to include in the information. Second, she contends that the State charged these crimes after the statute of limitations for them had expired. Third, she challenges the sufficiency of the evidence to support the convictions.

The statute of limitations is not an essential element of a crime. Because the State filed the amended information within three years of its actual discovery of Merritt's wrongdoing, the statute of limitations does not bar her prosecution. And because sufficient evidence supports her conviction, we affirm the judgment and sentence.

## Background

The State initially charged Diana Merritt with 5 counts of second degree identity theft, alleging she committed these offenses with Douglas White. The State later filed an amended information that charged 9 counts of second degree identity theft and 11 counts of mortgage fraud. White pleaded guilty to the 55 counts of fraud and identity theft as charged in the amended information. Merritt waived her right to a jury and proceeded to a bench trial.

At the State's request, the court dismissed count 54. By oral ruling, the trial court acquitted Merritt on the second degree identity theft charges and found her guilty on the remaining 10 counts of mortgage fraud.

Before the court entered findings of fact and conclusions of law, Merritt obtained new counsel who asked the court to reconsider its mortgage fraud decision. Counsel argued that the evidence did not support a finding that Merritt knew White was unlicensed and, further, that the State failed to prove the alleged crimes occurred within the statute of limitations.

The court denied the reconsideration request. The court entered findings of fact and conclusions of law finding Merritt guilty on all counts of mortgage fraud. The court sentenced Merritt to 90 days in jail. Merritt timely appeals.

No. 74469-1-I / 3

<u>Substantive Facts</u>

In 2004, Tom Reed, a licensed real estate appraiser, hired White as a trainee to perform appraisals for his company, Washington Appraisal Reviews Inc. White took the appraiser licensing exam twice during his time at Washington Appraisal. He failed each time. During the economic downturn, Reed laid off his employees, including White. In 2010, after White left, Reed discovered that someone was using his name and license number for appraisals that he had not performed.

Reed did not know that White performed appraisals doing business as Washington Real Estate Services Inc. He used Reed's electronic signature and license number on appraisal reports he submitted to clients and others. White met Merritt in 2005 and later moved in with her and became engaged.

Special Agent Bozena Schrank, of Housing & Urban Development's Office of Inspector General, met with Reed in July of 2010. Reed gave her the names of the only two people who had access to his appraisal software and his password, White and another person.

Schrank's initial investigation focused on White. Schrank obtained copies of White's banking records in late 2013 or 2014. These showed several financial transactions between White and Merritt. Schrank learned that Merritt had operated a mortgage brokerage business, Merit Home Finance. After reviewing

-3-

several loan files processed through Merit, Schrank obtained a search warrant for the Sammamish home shared by White and Merritt.

A search of this home uncovered additional loan files with appraisals bearing Reed's name and electronic signature that were not performed by Reed. A forensic search of White's and Merritt's computers revealed numerous e-mail exchanges in which Merritt asked White to perform appraisals for her clients.

At trial, Merritt describe her duties as a loan originator. They included collecting appraisals and other documentation for a loan officer to use to decide whether to make a loan. Merritt knew that the documents submitted to loan officers to support a loan included copies of Tom Reed's certified appraiser license. Merritt also knew that White performed the appraisals. She had accompanied White to at least two homes where he performed the appraisals that were later submitted under Tom Reed's electronic signature. Merritt testified that she believed White's assertion that Reed was the managing partner and his signature was embedded in the software. She knew that White, not Reed, owned Washington Real Estate Services. She testified that she reviewed documents for White.

Merritt further testified that she always assumed that White prepared the reports, even though Reed's signature was on them. She recognized the

discrepancies on invoices that did not match the company names of Reed and White.

Laura Kiel, employed by Mortgage Broker Services as a loan officer, mortgage loan specialist, and on its board of directors, testified about industry practices. She has worked in the mortgage industry since 1992. Kiel testified that it was standard practice to have a copy of the appraiser's license as an appendix to any submitted appraisal. The appraisal document is essential to obtaining a loan for property. A fraudulent appraisal places a transaction at risk for the loan being recalled.

Merritt timely appeals the trial court's findings of facts and conclusions of law.

## Analysis

Through counsel, Merritt asserts three reasons why her convictions should be vacated. First, she claims that the State failed to include in the information an alleged essential element of each crime, the statute of limitations. Second, she contends that the statute of limitations bars the convictions. Third, she challenges the sufficiency of the evidence to support her conviction. Finally, Merritt filed a statement of additional grounds for review, none of which have any merit.

Information

Merritt contends that the amended information was defective because it failed to state an essential element of the crime: that the crime took place within the statute of limitations. Defendants have the right to be fully informed of the nature of accusations against them so that they may prepare an adequate defense.[1] Both the state and federal constitutions require that the charging document state a criminal offense.[2] All the essential elements of a crime must be included in the charging document.[3] Omitting an essential element from the charging document violates a defendant's due process right to be fully informed of the charges.[4]

The amended information set forth the particular facts of each incident involved in the commission of the crime. Each count listed the time frame within which Merritt aided borrowers in obtaining residential mortgage loans by

> directly or indirectly: (1)(a) knowingly employ any scheme, device, or artifice to defraud or materially mislead a borrower, to-wit: [borrower's name], during the lending process; and (b) knowingly defraud or knowingly materially mislead a lender, or any person, to-wit: [borrower's name], in the lending process, or knowingly engage in any unfair or deceptive practice toward any person, to-wit: [borrower's name], in the lending process; and (c) knowingly obtain property by fraud or material misrepresentation in the lending process; and (2) knowingly make any misstatement, misrepresentation, or omission during the mortgage lending

---

[1] State v. Leach, 113 Wn.2d 679, 695, 782 P.2d 552 (1989).
[2] Leach, 113 Wn.2d at 695.
[3] State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).
[4] Leach, 113 Wn.2d at 690.

process knowing that it might be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process, to-wit: [borrower's name]; and (3) knowingly use or facilitate the use of any misstatement, misrepresentation, or omission, knowing the same to contain a misstatement, misrepresentation, or omission, during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process, to-wit: [borrower' name]; and (4) knowingly receive any proceeds or anything of value in connection with a residential mortgage closing that the defendant knew resulted from a violation of RCW 19.144.080;

Contrary to RCW 19.144.080 and 19.144.090, and against the peace and dignity of the State of Washington,

And further do allege the crime was a major economic offense or series of offenses, so identified by consideration of the following: multiple incidents per victim, monetary loss substantially greater than typical for the offense, occurred over a long period of time, and the defendants used their position of trust to facilitate the commission of the current offense, under the authority of RCW 9.94A.535(3)(d).

RCW 19.144.080 defines certain prohibited practices in the mortgage lending process. RCW 19.144.090(2) states that "[n]o information may be returned more than (a) five years after the violation, or (b) three years after the actual discovery of the violation, whichever date of limitation is later." The five-year statute of limitations begins to run only when all the elements of the crime have been completed.[5] The three-year statute begins to run only when the State has actually discovered that a defendant has committed the completed crime.

---

[5] Toussie v. United States, 397 U.S. 112, 115, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970) (quoting Pendergast v. United States, 317 U.S. 412, 418, 63 S. Ct. 268, 87 L. Ed. 368 (1943)).

Merritt claims that State v. Naillieux[6] and State v. Kjorskik[7] establish that the statute of limitations is an element of every crime. We disagree. In Naillieux, the information cited the current statute but stated some elements from a previous statute while also omitting some in the current statute. The court held that the State's citation to a current statute did not inform the defendant of the actual missing elements of the crime with which he was charged.[8] In Kjorskik, the information excluded a court-imposed essential element of the crime. The court again found that the information did not adequately inform the defendant, stating that the "defendant should not have to search for the rules or regulations they are accused of violating."[9] In Naillieux and Kjorskik, the State failed to allege an element of the charged crime, but in neither case was that element the statute of limitations. Thus, they do not support Merritt's position.

Merritt has not cited any case from any jurisdiction holding that the information must state the applicable statute of limitations. At oral argument Merritt's counsel conceded that he was not aware of any case where the State introduced a copy of the information as an exhibit or otherwise presented evidence informing the jury when the State filed the information. A jury would need this information to find that the State timely charged a defendant. We have

---

[6] 158 Wn. App. 630, 241 P.3d 1280 (2010).
[7] 117 Wn.2d 93, 812 P.2d 86 (1991).
[8] Naillieux, 158 Wn. App. at 645.
[9] Kjorsvik, 117 Wn.2d at 101.

also reviewed the pattern elements instructions for various crimes. None lists the statute of limitations as an element. The statute of limitations is not an essential element of the crime.

Statute of Limitations

The State added the mortgage fraud counts by amended information filed February 20, 2015. The counts all involve mortgage fraud acts that occurred between June 12, 2008, and June 10, 2009. RCW 19.144.090(2) states that "[n]o information may be returned more than (a) five years after the violation, or (b) three years after the actual discovery of the violation, whichever date of limitation is later." The charged incidents all occurred more than five years before the State filed the amended information. But the statute allows the State to file an information within three years after actual discovery of a violation. It requires an actual awareness that the loss occurred by virtue of the defendant's criminal act.

Merritt claims that the State discovered the fraud charged in these counts when Tom Reed contacted the police in 2010 about someone illegally using his electronic signature on an appraisal. But the victim of that appraisal was not a victim listed in the challenged mortgage fraud counts. In July of 2010, Reed met with an investigator from the Department of Housing and Urban Development and provided her with a copy of a property appraisal performed for Stay in Home

Mortgage. In 2012, Reed supplied the investigator with another incident of misuse of his credentials. An investigation over the course of the next several years revealed many additional incidents of fraud and eventually led to the discovery of Merritt's participation in these activities. Here the testimony of the investigator indicated she did not become aware of Merritt's possible involvement until late 2013 or early 2014 when they discovered the banking records showing multiple transactions between White and Merritt.

Nothing in the record shows that the State had actual knowledge of the charged incidents more than three years before it charged Merritt with them. A complaint about one incident by a potential victim of a crime that an investigation later shows involved a continuing course of criminal conduct with many incidents does not provide the State with actual knowledge of each incident. The State's actual discovery of an incident starts the statute of limitations for that incident. In 2010 a suspicion existed that White had committed a crime. The subsequent investigation focused on White's identify thefts. Only when the investigation team executed the 2014 warrant did the State acquire actual knowledge about Merritt's involvement in the charged crimes. Only then did the State's three-year period to file begin.

Sufficient Evidence

To decide whether sufficient evidence supports a conviction, this court asks whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[10] An appellate court limits its review in a bench trial to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether those findings support its conclusions of law.[11] Substantial evidence is that which is sufficient to persuade a rational person of the truth of the asserted premise.[12] Unchallenged findings are verities on appeal.[13] This court reviews challenges to a trial court's conclusions of law de novo.[14]

An insufficiency claim admits the truth of the State's evidence and all inferences that reasonably can be drawn from it.[15] The court "defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence."[16]

Merritt challenges several of the findings of fact.

Finding C states,

---

[10] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[11] State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014).
[12] Homan, 181 Wn.2d at 106.
[13] Homan, 181 Wn.2d at 106.
[14] Homan, 181 Wn.2d at 106.
[15] Salinas, 119 Wn.2d at 201.
[16] Homan, 181 Wn.2d at 106.

Between September 7, 2008 and October 6, 2008, Andaras Darazs applied for and obtained a residential mortgage through Defendant Diana Merritt's mortgage brokerage company, Merit Home Finance. Merritt was the loan originator and ordered the appraisal from the co-defendant, Douglas White. The appraisal report provided to Merritt by White (Ex.174) stated that it was prepared by Tom Reed, a licensed certified residential appraiser and contained his electronic signature. Merritt provided the appraisal report to the lender as the basis for the value of the residential property. Darazs did not know that the appraisal report submitted to the lender by Merritt was not in fact prepared by Reed, but rather by White. At the closing of the loan, Merritt received payment for brokering the mortgage in the form of an origination fee.

The court found several of the borrowers "did not know that the appraisal report submitted to the lender by Merritt was not in fact prepared by Reed, but rather by White." She challenges finding C as it relates to borrower Andaras Darazs. Merritt claims that because Darazs could not recall or remember who did the appraisal, the evidence was insufficient.

But Darazs testified that he refinanced or purchased his place through Merritt, who was "a friend of a friend." He knew White was Merritt's boyfriend. He initially hired him as his real estate agent but changed to someone else. Darazs testified that that was the extent of his relationship with White. He identified exhibit 172 as his loan application for the property which describes its purchase as the reason for the loan. Darazs testified that Merritt helped him finance the property through Merit Home Finance. Darazs verified exhibit 174 as the appraisal for his property. He further testified that the document contained Reed's signature as the appraiser for that property. Although Darazs could not

specifically recall reviewing the appraisal report, he did identify his home in the report and that the report contained Reed's name as the appraiser. Exhibit 174, along with Darazs's testimony, is substantial evidence supporting the trial court finding.

Merritt next challenges finding L which states,

> As to each count, Merritt knew that the respective appraisal listed Tom Reed as the appraiser and bore his electronic signature. Merritt also knew that Reed did not do the appraisals; in fact, she hired Douglas White, the co-defendant, to do them. <u>There is no indication anywhere on the appraisal reports that White was involved in the preparation of the appraisal or the report, irrespective of whether White had a certified residential appraiser license.</u>

(Emphasis added.) Merritt claims that because the reports listed White's company, Washington Real Estate Services Inc., as the business and included White's e-mail and phone number, this was sufficient to find that White was involved in the preparation of the appraisal. However, the reports contained Tom Reed's signature above any address and company name. The cover sheet of each appraisal contained Tom Reed's name without a company name. Tom Reed's signature appears on a letter transmitting the appraisal report that contained Merit Home Finance's address in Redmond. White's name does not appear anywhere in those appraisal documents. Substantial evidence supports the court's finding.

Finally, Merritt challenges findings N and O.

Finding N states,

> Based on her knowledge of the mortgage lending process, Merritt knew that the appraisals purportedly signed by Reed would be relied upon by the mortgage lender, the borrower and others in the lending process. By intentionally providing these invalid appraisals to others involved in the mortgage lending process, Merritt employed an artifice, scheme, or device to materially mislead borrowers and lenders alike, knowing full well that the lenders, borrowers and others would rely upon these misrepresentations.

Finding O states,

> Merritt received monetary payment upon the closing of each of these loans with the knowledge that these residential mortgages had been obtained as a result of mortgage fraud, in violation of RCW 19.144.080(1)(a) and (b), (2), and (3) and RCW 19.144.090.

Substantial evidence supports both of the trial court's findings.

Anyone reading the appraisals would reasonably conclude that a licensed appraiser named Tom Reed completed them. Merritt knew that White did the appraisals as she hired him to do them. Without valid appraisals by a licensed appraiser, lenders would not have made the loans. As Keil's testimony points out, the appraisal document is essential to obtaining funds for a loan or refinance and the appraisal must be done by a licensed appraiser. Thus, a facially valid appraisal is a material aspect of the lending process. Merritt knew that Tom Reed's signature was on the appraisals and that he did not perform them. She received monetary compensation at the closing of each mortgage as a result of those appraisals.

Substantial evidence supports the findings of fact and they support the court's conclusions of law. Conclusion of law II states,

The following elements of the crimes charged have been proven by the State beyond a reasonable doubt:

On the date or dates specified for each count described in the Findings of Fact, in conjunction with making, brokering, obtaining, or modifying a residential mortgage the defendant directly or indirectly knowingly:

(1)(a) Employed any scheme, device or artifice to defraud or materially mislead any borrower during the lending process; (b) defrauded or materially misled any lender or person, or engaged in any unfair or deceptive practice toward any person in the lending process; and

(2) Made any misstatement, misrepresentation or omission during the mortgage lending process knowing that it may be relied upon by a mortgage lender, borrower or any other party to the mortgage process; and

(3) Used or facilitated the use of any misstatement, misrepresentation, or omission, knowing the same to contain a misstatement, misrepresentation, or omission, during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower or any other party to the mortgage lending process; and

(4) Received any proceeds or anything of value in connection with the residential mortgage closing that such person knew resulted from a violation of subsection (1), (2) or (3) of this section; and

(5) Any of these acts occurred in the State of Washington.

Merritt's claim that insufficient evidence supports this conclusion lacks merit. Evidence clearly showed that Merritt submitted copies of Reed's license to support the appraisals that were performed by White. She further submitted

those appraisals with Reed's electronic signature when she knew that White had performed the appraisals. The mortgage lenders relied on the fact that the appraisals were performed by a licensed appraiser to determine whether to fund a particular transaction and the amount to fund. Merritt testified that she was aware of the rules and regulations of a loan originator. Documents that did not contain a certified appraiser's license would be insufficient to obtain a loan. Merritt's company received over 57 percent of its income from loans based on appraisals that were performed by White but submitted under Reed's signature and license certifications.

Sufficient evidence supports the convictions.

Statement of Additional Grounds for Review

Merritt submitted a statement of additional grounds for review. There, she alleges some of the same issues that we have addressed in her direct appeal, namely, lack of sufficient evidence to support the convictions and that the convictions were barred by the statute of limitations.

Merritt identifies inconsistencies in the testimony and from them argues that substantial evidence does not support the trial judge's findings. We defer to the trier of fact on issues of conflicting testimony, witnesses' credibility, and the persuasiveness of the evidence.[17]

---

[17] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Finally, Merritt suggests that an improper relationship existed among the defense attorney, prosecutor, and judge because they all had known each other for a long period of time. She insinuates that she might not have chosen a bench trial had she been aware of these relationships. The record contains no evidence of any improper relationship. Merritt's conclusory allegations provide no basis for appellate review.[18]

## Conclusion

Because the statute of limitations is not an element of a crime, the statute of limitations does not bar Merritt's convictions, and substantial evidence supports those convictions, we affirm.

_Leach, J._

WE CONCUR:

_Cox, J._

---

[18] See RAP 10.10(c) (appellate court will not consider statement of additional grounds for review unless it informs the court of the nature and occurrence of alleged errors).