[No. 40422-2-II. Division Two. September 13, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL EDWARD CATON, *Appellant*.

660

*Eric J. Nielsen (Nielsen, Broman & Koch PLLC)*, for appellant.

*Jonathan L. Meyer, Prosecuting Attorney*, and *Sara I. Beigh, Deputy*, for respondent.

¶1 VAN DEREN, J. — Michael Caton appeals his conviction for failure to register as a sex offender. He argues: (1) the legislature violated separation of powers principles when it authorized county sheriffs under former RCW 9A.44.130(7) (2006) to designate a reporting date within a 90 day period for certain registered sex offenders, (2) former RCW 9A.44-.130(7) violates equal protection principles on the same

basis, (3) former RCW 9A.44.130(7) is unconstitutionally vague, (4) admission of Caton's sex offender registration form at trial violated his right to confront witnesses, and (5) sufficient evidence does not support his conviction. In a statement of additional grounds for review,[1] he also contends: (1) the trial court erroneously included his failure to register as a sex offender conviction when calculating his offender score, (2) the trial court erred when it sentenced him to community custody, (3) sentencing him under former RCW 9A.44.130(11)(a) violated ex post facto prohibitions, and (4) the county sheriff failed to follow statutory sex offender registration requirements. We affirm.

## FACTS

¶2 On May 19, 2009, Caton registered as a sex offender with the Lewis County Sheriff's Office. When he registered, he signed a notification form acknowledging his understanding (1) that he was required to report to the sheriff's office every 90 days, (2) that his reporting date was June 16, 2009, between 8:00 a.m. and 5:00 p.m., and (3) that failure to report on that date was a felony offense.[2] Lewis County Sheriff's Detective Bradford Borden provided Caton with a copy of the notification form.

¶3 To reasonably manage the 90 day reporting requirement for all sex offenders living in Lewis County, the county specified four predesignated reporting days, one in each quarter of the year. It did not set individual reporting dates for each sex offender because doing so would be "very chaotic." Report of Proceedings (RP) at 61.

¶4 On June 9, Caton was arrested for a "driving offense." Clerk's Papers (CP) at 7. On June 10, after his release from jail, he appeared at the sheriff's office, believing that as a registered sex offender, he was required to report to the

---

[1] RAP 10.10.

[2] The trial court admitted this form as "Plaintiff's Identification 2" at trial. Report of Proceedings at 59. It is not part of the record on appeal.

sheriff after release from confinement for any offense. Borden did not give him a new registration date, leaving June 16 as Caton's next reporting date.

¶5 On June 16, Caton failed to report to the sheriff's office; instead he reported on June 17. The State charged him under former RCW 9A.44.130(7) and former RCW 9A.44.130(11)(a) with failure to register as a sex offender for failing to report in person "on the required day for the 90 day reporting" period. CP at 1.

¶6 At a bench trial, Borden stated that he worked in the Lewis County Sheriff's Office Sex Offender Registration Unit and was its sex offender registration file custodian. He stated that the sheriff's office ultimately sets the risk level for registered sex offenders, but that the Washington State Department of Corrections' End of Sentence Review Committee (ESRC) also sets offenders' risk levels when they are released from confinement. Borden stated that the sheriff's office prepared Caton's registration form and used it for "initial registration[ ] and changes of address." RP at 57. Over Caton's hearsay and foundation objections, the trial court admitted the registration form.

¶7 Referring to Caton's sex offender registration form, Borden stated that ESRC classified him as a level II offender. Borden classified Caton as a level II sex offender on the Lewis County registration form based on Caton's sex offender registration file, including the ESRC's report. Borden stated that the ESRC's report contained "a synopsis of the details concerning" Caton and that based on numeric assessment tools, the ESRC had elevated him to a level II offender. RP at 65. Caton unsuccessfully renewed his objection to the registration form's admission on hearsay and foundation grounds, arguing that "it's based on some other documentation to indicate risk level II and that that should be a prerequisite foundational requirement, prior to the admission of that document." RP at 66.

¶8 The trial court convicted Caton as charged. It calculated his offender score as 9+ and sentenced him to 50 months' incarceration and 36 months' community custody.

## ANALYSIS

I. SEPARATION OF POWERS

¶9 Caton, citing *State v. Torres Ramos*, 149 Wn. App. 266, 202 P.3d 383 (2009), argues that the legislature's authorization of county sheriffs under former RCW 9A.44.130(7) to determine sex offenders' reporting date during the 90 day reporting period violates separation of powers principles because it allows them to define an essential element of the crime of failure to register as a sex offender.

¶10 We review a statute's constitutionality de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). We presume the statute's constitutionality, and the party challenging it must prove its unconstitutionality beyond a reasonable doubt. *Abrams*, 163 Wn.2d at 282.

¶11 Washington courts have recognized the separation of powers doctrine as a founding, implicit principle of our state and federal constitutions. *State v. Blilie*, 132 Wn.2d 484, 489, 939 P.2d 691 (1997). The doctrine serves to ensure that the fundamental functions of each government branch remain inviolate. *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). When separation of powers challenges are raised involving different branches of state government, only the state constitution is implicated. *Carrick*, 125 Wn.2d at 135 n.1.

¶12 Authority to define crimes and set punishments rests firmly with the legislature. *State v. Wadsworth*, 139 Wn.2d 724, 734, 991 P.2d 80 (2000). Specifically, the legislature is responsible for defining the elements of a crime. *State v. Evans*, 154 Wn.2d 438, 447 n.2, 114 P.3d 627 (2005); *Wadsworth*, 139 Wn.2d at 735. "[I]t is unconstitutional for the Legislature to abdicate or transfer its legislative function to others." *Brower v. State*, 137 Wn.2d 44, 54,

969 P.2d 42 (1998). Such a delegation is proper, however, when (1) the legislature provides standards to indicate what is to be done and designates the agency to accomplish it and (2) procedural safeguards exist to control arbitrary administrative action and abuse of discretionary power. *State v. Simmons*, 152 Wn.2d 450, 455, 98 P.3d 789 (2004).

¶13 We also review questions of statutory interpretation, such as the essential elements of a crime, de novo. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). When interpreting a statute, we seek to ascertain the legislature's intent. *Jacobs*, 154 Wn.2d at 600. " '[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Jacobs*, 154 Wn.2d at 600 (alteration in original) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We determine the " 'plain meaning' " of a statutory provision from the ordinary meaning of its language, as well as the general context of the statute, related provisions, and the statutory scheme as a whole. *Jacobs*, 154 Wn.2d at 600 (citing *Campbell & Gwinn*, 146 Wn.2d at 9-10)). We interpret statutes to give effect to all language in the statute and to render no portion meaningless or superfluous. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

¶14 The elements of a crime are "those facts 'that the prosecution must prove to sustain a conviction.' " *State v. Miller*, 156 Wn.2d 23, 27, 123 P.3d 827 (2005) (quoting BLACK'S LAW DICTIONARY 559 (8th ed. 2004)). "An 'essential element is one whose specification is necessary to establish the very illegality of the behavior.' " *State v. Tinker*, 155 Wn.2d 219, 221, 118 P.3d 885 (2005) (quoting *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)). It is proper to look first to the statute to determine the elements of a crime. *Miller*, 156 Wn.2d at 27.

¶15 Former RCW 9A.44.130(7) provided:

All offenders who are required to register pursuant to this section who have a fixed residence and who are designated as

a risk level II or III must report, in person, every ninety days to the sheriff of the county where he or she is registered. Reporting shall be on a day specified by the county sheriff's office, and shall occur during normal business hours.

Former RCW 9A.44.130(11)(a) provided, "A person who knowingly fails to comply with any of the requirements of this section is guilty of a class C felony."

¶16 In *Ramos*, we considered whether the legislature's delegation of authority under former RCW 4.24.550(6)(b) (2005), allowing the county sheriff to assign risk classifications to sex offenders, violated separation of powers principles.[3] 149 Wn. App. at 269-70. We observed that the statute, by allowing the county sheriff to classify offenders with a risk level I or II, allowed the county sheriff to define an element essential to a violation of the requirements of former RCW 9A.44.130(7). *Ramos*, 149 Wn. App. at 271-72. We further observed that former RCW 4.24.550(6)(b) did not provide standards, definitions, or methodologies to guide local law enforcement agencies in determining an offender's classification. *Ramos*, 149 Wn. App. at 275-76. We held that the legislature's delegation of this function to the county sheriff was improper. *Ramos*, 149 Wn. App. at 276.

¶17 In reaching this holding, we distinguished *State v. Melcher*, 33 Wn. App. 357, 655 P.2d 1169 (1982). *Ramos*, 149 Wn. App. at 273. In that case, Melcher argued that former RCW 46.61.506(3) (1979) improperly delegated legislative authority because the statute allowed the state toxicologist to approve methods of chemical analysis for determining breath or blood alcohol content levels and a driver's blood alcohol level is one element of the crime of driving under the influence. *Melcher*, 33 Wn. App. at 359-60. But Division Three of this court reasoned that the statute "d[id] not delegate the power to make a law; rather, it delegate[d] the 'power to determine some fact or state of things upon which

---

[3] Former RCW 4.24.550(6)(b) provided, "Local law enforcement agencies that disseminate information pursuant to this section shall . . . assign risk level classifications to all offenders about whom information will be disseminated."

the law makes, or intends to make, its own action depend.' " *Melcher*, 33 Wn. App. at 361 (internal quotation marks omitted) (quoting *Carstens v. DeSellem*, 82 Wash. 643, 650, 144 P. 934 (1914)). Because the statute adequately defined the element of the crime in question (permissible level of blood alcohol content) and properly delegated the duty of establishing measurement procedures for this objective standard to the state toxicologist, the delegation was administrative, not legislative. *Melcher*, 33 Wn. App. at 361. Thus, the delegation was not subject to challenge under separation of powers principles. *Melcher*, 33 Wn. App. at 361.

¶18 The legislature's delegation to county sheriffs to set the reporting date for sex offenders who are required to register is more akin to the delegation of power in *Melcher* than to the delegation in *Ramos*. Here, the legislature defined the elements of the crime as knowingly failing to comply with former RCW 9A.44.130(7)'s 90 day reporting requirement. It established the 90 day reporting period as an objective standard. It delegated the power to determine the " 'fact . . . upon which the law makes, or intends to make, its own action depend,' " i.e., the reporting date within the 90 day period, to the county sheriff. *Melcher*, 33 Wn. App. at 361 (internal quotation marks omitted) (quoting *Carstens*, 82 Wash. at 650). Thus, the delegation was administrative, allowing each county to manage the reporting requirement in accord with its staffing levels and staff availability, and it did not violate separation of powers principles. Caton's claim fails.

II. Equal Protection

¶19 Caton also argues that former RCW 9A.44.130's authorization of county sheriffs to specify a reporting date within the 90 day reporting period for level II and III sex offenders violates his federal and state constitutional guaranties of equal protection.

¶20 Constitutional equal protection guaranties require similar treatment under the law for similarly situated

persons. U.S. Const. amend. XIV, § 1; Wash. Const. art. I, § 12; *State v. Ward*, 123 Wn.2d 488, 515, 869 P.2d 1062 (1994). "Where persons of different classes are treated differently, there is no equal protection violation." *Ward*, 123 Wn.2d at 515.

¶21 We review an allegedly discriminatory statutory classification affecting suspect classes under a strict scrutiny test. *Ward*, 123 Wn.2d at 516. But "[s]ex offenders are not a suspect class for purposes of equal protection review." *Ward*, 123 Wn.2d at 516. Therefore, we review Caton's claim under a rational basis test. *Ward*, 123 Wn.2d at 516. A law satisfies this test if it rests on a legitimate state objective, and the law is not wholly irrelevant to achieving that objective.[4] *Ward*, 123 Wn.2d at 516.

¶22 Here, the legislature stated explicitly that the State's policy is "to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in [RCW 9A.44.130]." Laws of 1990, ch. 3, § 401. Our Supreme Court has recognized this as a legitimate state objective. *Ward*, 123 Wn.2d at 516-17. Granting law enforcement agencies discretion in specifying a reporting date allows them to effectively allocate their resources and provides them with a manageable number of sex offenders to monitor on each reporting date. *See Ward*, 123 Wn.2d at 517. Therefore, allowing counties to set the reporting date within the 90 day registration period for level II and III sex offenders is not arbitrary and rationally relates to the state's interest in assisting local law enforcement in this task. Accordingly, we hold that authorizing county sheriffs to set the reporting date in

---

[4] Caton cites to additional rational relationship review factors: (1) whether the law applies equally to all members in the designated class, (2) whether there are reasonable grounds for distinguishing between those within and those without the class, and (3) whether the law has a rational relationship to the law's purpose. *Petersen v. State*, 100 Wn.2d 421, 445, 671 P.2d 230 (1983). Because our Supreme Court declined to apply these factors in *Ward* and, because these factors overlap with the standard applied in *Ward*, we decline to apply them.

former RCW 9A.44.130(7) does not violate equal protection guaranties.

III. Vagueness

¶23 Caton further argues that former RCW 9A.44.130(7) is unconstitutionally vague because it fails to provide adequate notice of the conduct it requires or proscribes. We disagree.

¶24 We review a vagueness challenge to a statute's constitutionality de novo. *State v. Watson*, 160 Wn.2d 1, 5-6, 154 P.3d 909 (2007). When the statute does not involve First Amendment[5] rights, we review a vagueness challenge by examining the statute as applied to the particular facts of the case. *Watson*, 160 Wn.2d at 6. A challenger bears the burden of proving beyond a reasonable doubt that a statute is unconstitutionally vague and, because we presume a statute is constitutional and the standard for finding a statute unconstitutionally vague is high, only in exceptional cases may a challenger overcome this presumption. *Watson*, 160 Wn.2d at 11.

¶25 We consider a statute void for vagueness if either (1) the statute fails to define the criminal offense with sufficient definiteness—allowing ordinary people to understand what conduct the statute proscribes—or (2) the statute fails to provide ascertainable standards of guilt to protect against arbitrary enforcement. *Watson*, 160 Wn.2d at 6. Caton appears to challenge former RCW 9A.44.130(7) only on the first ground.

¶26 "The due process clause of the Fourteenth Amendment to the United States Constitution requires statutes to provide fair notice of the conduct they proscribe." *Watson*, 160 Wn.2d at 6. To meet this standard, "the language of a penal statute 'must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Watson*, 160

---

[5] U.S. Const. amend. I.

Wn.2d at 6-7 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)). "A statute fails to provide the required notice if it 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Watson*, 160 Wn.2d at 7 (quoting *Connally*, 269 U.S. at 391).

¶27 But, because " '[s]ome measure of vagueness is inherent in the use of language,' " we "do not require 'impossible standards of specificity or absolute agreement.' " *Watson*, 160 Wn.2d at 7 (alteration in original) (internal quotation marks omitted) (quoting *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 740, 818 P.2d 1062 (1991); *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992)). In addition, "[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute" and we consider such materials " '[p]resumptively available to all citizens.' " *Watson*, 160 Wn.2d at 8 (second alternation in original) (internal quotation marks omitted) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693 (1990)).

¶28 Unconstitutional vagueness is not mere uncertainty, and a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which their actions become prohibited conduct. *Watson*, 160 Wn.2d at 7. Given this, "a statute meets constitutional requirements '[i]f persons of ordinary intelligence can understand what the ordinance proscribes, notwithstanding some possible areas of disagreement.' " *Watson*, 160 Wn.2d at 7 (alteration in original) (internal quotation marks omitted) (quoting *Douglass*, 115 Wn.2d at 179)).

¶29 Here, former RCW 9A.44.130(7) required that sex offenders with a fixed residence report to the county sheriff every 90 days on a date specified by the sheriff. Former RCW 9A.44.130(11) stated that failure to comply with any of the requirements of former RCW 9A.44.130

constituted a felony. These statutes were presumptively available to Caton. The Lewis County Sheriff's Office informed Caton that the next specified reporting date was June 16, 2009, and that failure to report on that date was a crime. Accordingly, a person of ordinary intelligence would understand that failure to report on June 16 was a crime. Caton's vagueness challenge fails.

## IV. CONFRONTATION CLAUSE

¶30 Caton additionally argues that the trial court's admission of his sex offender registration form containing Borden's classification of him as a level II sex offender, based in part on his ESRC classification, violated the confrontation clause and requires reversal. Specifically, he argues that "the trial court admitted and relied upon [the registration form] to find the essential element that . . . Caton was a level II or III sex offender, yet this document merely recited information derived from another document that was not proffered by the State or admitted at trial." Br. of Appellant at 24.

¶31 The Sixth Amendment to the United States Constitution[6] and article I, section 22 of the Washington Constitution[7] guarantee criminal defendants the right to confront and cross-examine witnesses. The confrontation clause provides that the State can present testimonial out-of-court statements of an absent witness only if the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). But the State can present nontestimonial hearsay under the Sixth Amendment subject only to evidentiary rules. *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). Accordingly, "the existence of an applicable

---

[6] "[T]he accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI.

[7] Under Washington's constitution, the accused also has "the right to . . . meet the witnesses against him face to face." WASH. CONST. art. I, § 22.

hearsay exception is not dispositive as to the issue of admissibility at trial. Rather, the Confrontation Clause requires another layer of analysis." *State v. Kirkpatrick*, 160 Wn.2d 873, 882, 161 P.3d 990 (2007). The State has the burden on appeal of establishing that statements are nontestimonial. *State v. Koslowski*, 166 Wn.2d 409, 417 n.3, 209 P.3d 479 (2009). We review confrontation clause violations for constitutional harmless error. *Koslowski*, 166 Wn.2d at 431.

¶32 Caton raises this constitutional claim for the first time on appeal. RAP 2.5(a) generally does not allow parties to raise claims for the first time on appeal. But RAP 2.5(a)(3) allows appellants to raise claims for the first time on appeal if such claims constitute manifest constitutional error. To establish manifest constitutional error allowing appellate review, appellants must demonstrate actual prejudice resulting from the error on the record. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). " 'Essential to this determination is a plausible showing . . . that the asserted error had practical and identifiable consequences in the trial.' " *Kirkman*, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

¶33 In *State v. Kronich*, 160 Wn.2d 893, 900-01, 161 P.3d 982 (2007), our Supreme Court held that a confrontation clause violation was "manifest" because, had it been raised at trial, the challenged statement would have been excluded, thus fatally undermining the State's case. Here, Borden testified that the county sheriff ultimately sets an offender's risk level and that he classified Caton as a level II sex offender. The trial court could have relied on Borden's testimony that he classified Caton as a level II offender after reviewing all of Caton's records, thus requiring Caton to report every 90 days. Even assuming that the trial court erroneously admitted the form, its exclusion would not have fatally undermined the State's case. Accordingly, any error here is neither manifest nor subject to our review.

V. Sufficiency of the Evidence

¶34 Caton also contends that sufficient evidence does not support his conviction because (1) the State showed that he failed to report to the county sheriff within 27 days, not within 90 days, after registering as a sex offender and (2) no admissible evidence established that he was a level II sex offender required to report because admission of the form used by Borden to classify Caton as a level II sex offender violated the confrontation clause.

¶35 Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). On appeal, we draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. *Hosier*, 157 Wn.2d at 8. In the sufficiency context, we consider circumstantial evidence equally as probative as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford*, 541 U.S. 36.

¶36 Caton assigns error only to finding of fact 1.4, "[Caton's] risk level was set at a Level II by the [ESRC] and that level was adopted by the Lewis County Sheriff's Office." CP at 7. The trial court's unchallenged findings stated, (1) the Lewis County Sheriff's Office has four preset quarterly reporting dates for level II and III sex offenders and does not give individual offenders dates differing from the preset dates; (2) on May 19, 2009, Caton registered as a sex offender with the sheriff's office; (3) he registered a fixed address; (4) on May 19, he was given in writing the quarterly report date of June 16, 2009; (5) he had knowledge that he had to report to the sheriff's office on June 16

between 8:00 a.m. and 5:00 p.m.; (6) he was arrested on June 9 for a driving offense and was released from jail on June 10; (7) he appeared at the sheriff's office on June 10 after his release from custody; (8) he failed to report to the sheriff's office on June 16; and (9) he reported on June 17. Unchallenged factual findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

¶37 Here, former RCW 9A.44.130(7) required that sex offenders with a fixed residence report to the county sheriff every 90 days on a date specified by the sheriff. Former RCW 9A.44.130(11)(a) stated that failure to comply with any of the requirements of former RCW 9A.44.130 constituted a crime. The trial court's unchallenged findings established that Caton had a fixed residence in Lewis County and knowingly failed to report on June 16, 2009, the designated reporting date. Finally, Borden's testimony established that the Lewis County Sheriff's Office classified Caton as a level II sex offender, and he was thus subject to the reporting requirement. We have determined that any error in admitting Caton's sex offender registration form is neither manifest nor subject to our review and that the trial court considered Borden's unchallenged testimony of his classification of Caton. Sufficient evidence supports his conviction.

VI. Statement of Additional Grounds for Review

A. Offender Score

¶38 Caton argues that the trial court erroneously included his failure to register conviction as a sex offense when calculating his offender score at sentencing. But the applicable version of the Sentencing Reform Act of 1981, chapter 9.94 RCW, defined a "sex offense" as "[a] felony that is a violation of chapter 9A.44 RCW other than [former] RCW 9A.44.130(12)." Former RCW 9.94A.030(46)(a)(i) (2008). Here, Caton was convicted under former RCW 9A.44-.130(11)(a), not an excluded offense. His claim fails.

## B. Community Custody

 ¶39 Caton contends that the trial court erred in sentencing him to community custody for his failure to register conviction. Former RCW 9.94A.545(2)(a) (2008)[8] provided, "If the offender is guilty of failure to register under [former] RCW 9A.44.130(11)(a), the court shall impose a term of community custody under [former] RCW 9.94A.715 [(2008)]."[9] Former RCW 9.94A.715(1) provided, "When a court sentences a person to the custody of the department for a sex offense not sentenced under [former] RCW 9.94A.712 [(2008)][10] the court shall in addition to the other terms of the sentence, sentence the offender to community custody." Former RCW 9.94A.712 did not contain failure to register as a crime requiring its application. Here, Caton committed failure to register under former RCW 9A.44.130(11)(a). Thus, the statutes authorized the trial court to impose community custody as part of his sentence. His claim fails.

## C. Ex Post Facto

 ¶40 Caton further argues that the trial court violated ex post facto prohibitions by sentencing him under former RCW 9A.44.130(11)(a) instead of the law in effect in 2001. But we apply the law in effect at the time the crime was committed. *State v. Schmidt*, 143 Wn.2d 658, 673-74, 23 P.3d 462 (2001). He committed the crime on June 16, 2009, when former RCW 9A.44.130(11)(a) was in effect. The trial court did not retroactively apply a new statute to his crime. His claim fails.

---

[8] LAWS OF 2008, ch. 276, § 304.

[9] LAWS OF 2008, ch. 276, § 305. Former RCW 9.94A.715 was repealed, effective August 1, 2009, pursuant to the direction found in section 42(2), chapter 28, Laws of 2009 and section 57(3), chapter 231, Laws of 2008.

[10] Former RCW 9.94A.712 was recodified as former RCW 9.94A.507 (2008), effective August 1, 2009, pursuant to the direction found in section 56(4), chapter 231, Laws of 2008.

D. Sex Offender Registration Requirements

¶41 Finally, Caton contends that Borden failed to follow sex offender registration requirements, such as obtaining his fingerprints and giving him a new registration date, when he reported to Borden after his release from jail on June 10. But he was jailed for a "driving offense." CP at 7. Former RCW 9A.44.130(4)(a)(i) provided, "Sex offenders who committed a sex offense . . . and who, on or after July 28, 1991, are in custody, as a result of that offense . . . must register at the time of release from custody." Here, he was not released from custody as a result of a sex offense. His claim fails.

ARMSTRONG and JOHANSON, JJ., concur.