FILED
COURT OF APPEALS
DIVISION II

2015 JAN 27 AM 8: 48

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44652-9-II |
| Appellant. | PART PUBLISHED OPINION |
| v. | |
| LELDON R. PITTMAN, | |
| Respondent. | |

BJORGEN, A.C.J. — Leldon R. Pittman appeals his convictions for attempting to elude a

police vehicle and for driving under the influence of intoxicants. Pittman claims that the

charging information omitted essential elements from the charge of attempting to elude a police

vehicle and that the parties' exercise of their peremptory challenges on paper violated his right to

a public trial. In a pro se statement of additional grounds, Pittman claims that his trial was

untimely, requiring dismissal under CrR 3.3, and that he received ineffective assistance of

counsel. We conclude in the published portion of this opinion that the charging information was

adequate, and we address and reject Pittman's additional arguments in the unpublished portion.

We affirm.

FACTS

In January 2012, Pittman returned home after a night out and fought with his mother and stepfather. After Pittman and his girl friend drove off, his mother called 911 to report the altercation and gave a description of Pittman's car.

Police dispatch reported the incident as a vehicular assault involving a dark colored vehicle with a broken front windshield, and units from the Fife and Milton police departments responded. One of these units saw a car matching that description driving erratically away from the scene of the altercation. As the uniformed officer pulled behind the car to initiate a traffic stop, the car sped away. The car, later determined to be the one driven by Pittman, led officers on a chase at speeds between 30 and 80 m.p.h. During this chase, the sirens and emergency lights of the police vehicles were in use.

The chase ended when Pittman's car crashed. As police officers approached the crashed vehicle, Pittman got out of it, saw the officers and, despite verbal commands that he stop, attempted to flee. Officers ultimately had to taser Pittman to subdue him.

The State charged Pittman with, among other offenses, driving under the influence of alcohol in violation of RCW 46.61.502(1)(c) and attempting to elude a police vehicle in violation of RCW 46.61.024(1).[1] On the eluding charge, the information stated that

> Leldon Roy Pittman . . . did unlawfully, feloniously, and wil[l]fully fail or refuse to immediately bring his vehicle to a stop and drive his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring his vehicle to a stop by a uniformed officer in a vehicle equipped with lights and sirens, contrary to RCW 46.61.024(1).

---

[1] RCW 46.61.024(1) provides that
> [a]ny driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren.

Clerk's Papers (CP) at 12. The State alleged that while attempting to elude the police, Pittman endangered one or more persons other than himself or the pursuing officers, an aggravating circumstance for sentencing under RCW 9.94A.533(11).

After trial, the jury convicted Pittman of the driving under the influence and attempting to elude offenses. The jury also found that Pittman had endangered persons other than himself or the pursuing police when he attempted to elude a police vehicle, constituting the aggravating circumstance for sentencing.

Pittman timely appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE CHARGING DOCUMENT

Pittman argues that the information omitted an essential element of the crime of attempting to elude a police officer. Specifically, he contends that the charging document omitted any mention that police signaled by hand, voice, emergency light, or siren that he should stop. We hold that the method by which police officers signal to stop is not an essential element of the crime of attempting to elude a police vehicle and that the information did not need to include this language.

An information is constitutionally defective if it fails to list the essential elements of a crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). The essential elements of a crime are those "'whose specification is necessary to establish the very illegality of the behavior' charged."[2] *Zillyette*, 178 Wn.2d at 158 (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640

---

[2] Essential elements required in an information may be imposed by statute or common law. *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). Pittman's challenge here concerns statutory elements, since he claims that language found in RCW 46.61.024(1) creates an essential element.

(2003)). Requiring the State to list the essential elements in the information protects the defendant's right to notice of the nature of the criminal accusation guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. *Zillyette*, 178 Wn.2d at 158. Due to the constitutional nature of the challenge to the sufficiency of an information, we review de novo claims that it omitted essential elements of a charged crime. *State v. Williams*, 133 Wn. App. 714, 717, 136 P.3d 792 (2006).

In a challenge to the sufficiency of an information, we must first decide whether the allegedly missing element is, in fact, an essential element. *See State v. Tinker*, 155 Wn.2d 219, 220, 118 P.3d 885 (2005). If so, and where the defendant challenges, as here, the sufficiency of the information for the first time on appeal, we must then "liberally construe the language of the charging document in favor of validity." *Zillyette*, 178 Wn.2d at 161. Liberal construction requires that we determine whether "the necessary elements appear in any form, or by fair construction, on the face of the document and, if so," whether "the defendant [can] show he or she was actually prejudiced by the unartful language." *Zillyette*, 178 Wn.2d at 162 (citing *Kjorsvik*, 117 Wn.2d at 105-06).

The elements of the crime of attempting to elude a police vehicle are fixed in RCW 46.61.024(1), which states:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

4

The information, set out above, omits any mention of making the signal by hand, voice, emergency light, or siren. The issue, then, is whether making the signal by one of those four means is an essential element of the crime.

To make such a determination, we must engage in statutory interpretation. *Tinker*, 155 Wn.2d at 221; *State v. Caton*, 163 Wn. App. 659, 668, 260 P.3d 946 (2011), *reversed on other grounds by* 174 Wn.2d 239, 273 P.3d 980 (2012). When interpreting a statute, we attempt to ascertain and give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We ascertain the legislature's intent using the plain meaning imparted by the text of the provision and that of any related provisions. *Campbell & Gwinn*, 146 Wn.2d at 11-12. Where a statute is susceptible of multiple reasonable interpretations after the plain meaning analysis, it is ambiguous, and we must turn to extrinsic evidence such as legislative history, common law precedent, or canons of construction to determine the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 12.

The first sentence of RCW 46.61.024(1), quoted above, plainly sets out essential elements of the crime: those elements which are necessary to establish illegality. *Zillyette*, 178 Wn.2d at 158. One of those elements is that the defendant must have been given a visual or audible signal to bring the vehicle to a stop. The second sentence then specifies further that the signal must have been given by "the police officer" and that it "may be by hand, voice, emergency light, or siren." RCW 46.61.024(1). The third sentence of RCW 46.61.024(1) adds to this by requiring that the officer giving the signal be in uniform.

The requirements in the second and third sentences that the signal be given by a police officer in uniform are also necessary to establish illegality and are thus essential elements under *Zillyette*. 178 Wn.2d at 158. The statement in the second sentence, though, that the police

"may" signal "by hand, voice, emergency light, or siren," is not so easily characterized. RCW 46.61.024(1). "May" in this context could reasonably be read as requiring the police to use any one of the four enumerated means of signaling to a defendant. RCW 46.61.024(1). The defendant would not act criminally unless he or she disregarded one of the specified signal types. However, as the State notes, the legislature's use of "may" in RCW 46.61.024(1) could also reasonably be read to permit, but not require, one of the enumerated types of signals. Under this reading of the statute, the manner in which police give the signal does not establish the criminality of the defendant's actions. Instead the State would only need to prove that the defendant disregarded some type of police signal to stop to show criminal behavior.[3] Under the former reading, the manner in which police signal would be an essential element of the crime. *Cf. Zillyette*, 178 Wn.2d at 160 (type of controlled substance is a necessary element where the delivery of only certain types of controlled substances can give rise to homicide by delivery charges). Under the latter reading, it would not be an essential element.

Under its plain meaning, then, RCW 46.61.024(1) is susceptible of multiple reasonable interpretations and is therefore ambiguous. *Campbell & Gwinn*, 146 Wn.2d at 12. With that ambiguity, we must turn to legislative history, common law precedent, or canons of construction to determine the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 12. One of those canons states that we construe statutes in a manner avoiding absurd interpretations. *State v. Ortega*, 177 Wn.2d 116, 130, 297 P.3d 57 (2013). Closely related to this canon is the fundamental rule that we construe statutes to give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10.

---

[3] The use of "may" in the second sentence and "shall" in the third does not resolve this dichotomy, since "may" logically could mean that the signal must be given by any one of the four listed means. RCW 46.61.024(1).

The gravamen of the attempting to elude offense is that the defendant failed to stop when signaled to do so by police. Courts have recognized that this serves the legislature's goal of "prevent[ing] 'unreasonable conduct in resisting law enforcement activities.'" *State v. Treat*, 109 Wn. App. 419, 426, 35 P.3d 1192 (2001) (quoting *State v. Hudson*, 85 Wn. App. 401, 403, 932 P.2d 714 (1997)). As the State points out, under Pittman's interpretation, defendants could freely ignore certain types of law enforcement signals such as whistles, flares, or written signs, thereby defeating the legislature's intent in enacting RCW 46.61.024(1).

Resolving an ambiguity by following an interpretation that so erodes transparent legislative intent creates a basic and unnecessary contradiction in the law. This dissonance both creates an absurdity under *Ortega*, 177 Wn.2d at 130, and ignores the basic injunction of statutory construction to give effect to legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. To avoid that absurdity and to honor that intent, RCW 46.61.024 (1) must be interpreted to require that the police have reasonably signaled the defendant to stop, but not that they must have made that signal exclusively by hand, voice, emergency light, or siren. Therefore, the specific method by which the police made this signal is not an essential element of the crime of attempting to elude a police vehicle.

Pittman attempts to analogize the information in his case to the one found defective in *State v. Naillieux*, 158 Wn. App. 630, 241 P.3d 1280 (2010). In *Naillieux* the State alleged in the information that the defendant had driven

> "his . . . vehicle in a manner indicating a wanton or willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle appropriately marked after being given visual or audible signal by a uniformed police officer to bring his . . . vehicle to a stop."

158 Wn. App. at 644 (quoting Clerk's Papers at 3-4). The language in the information in *Naillieux* tracked the language found in an older version of the attempting to elude statute. 158

7

Wn. App. at 644 (citing former RCW 41.61.024 (1983)). Legislative amendments had modified two elements found in the former statute before Naillieux's alleged criminal act.[4] Division Three of our court found that the use of the former statutory language in the information failed to provide notice of the essential elements of the crime of attempting to elude a police vehicle as it existed when Naillieux allegedly refused to stop. *Naillieux*, 158 Wn. App. at 644-45. *Naillieux*, therefore, simply stands for the rule that use of obsolete statutory language in an information may well miss current essential elements of an offense. It does not suggest that use of the phrase "visual or audible signal" overlooks an essential element of the offense.

The specific manner by which police signal someone to stop is not an essential element of the crime of attempting to elude a police vehicle. The information therefore did not omit an essential element of that crime.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## II. PUBLIC TRIAL

After conducting voir dire, the parties exercised their peremptory challenges to potential jurors by listing the jurors that they wished to strike on a piece of paper. There is no evidence that the trial court considered the factors prescribed in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), before allowing the parties to exercise their peremptory challenges in this

---

[4] First, the legislature had replaced the phrase "'manner indicating a wanton or willful disregard for the lives or property of others'" with the phrase "'reckless manner.'" *Naillieux*, 158 Wn. App. at 644 (citing LAWS OF 2003, ch. 101, § 1). Second, the legislature had replaced the phrase "'appropriately marked showing it to be an official police vehicle'" with the phrase "'equipped with lights and sirens.'" *Naillieux*, 158 Wn. App. at 645 (citing LAWS OF 2003, ch. 101, § 1).

manner. Pittman contends that following this process without first conducting on the record the inquiry required by *Bone-Club*, 128 Wn.2d 258-59, violated his right to a public trial. His challenge, however, fails under recent precedent.

In *State v. Marks*, ___ Wn. App. ___, 339 P.3d 196 (2014), we rejected a nearly identical challenge to the use of written peremptory challenges, relying on our decisions in *State v. Wilson*, 174 Wn. App. 328, 338-40, 298 P.3d 148 (2013), *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013), and *State v. Dunn*, 180 Wn. App. 570, 321 P.3d 1283 (2014), as well as the Supreme Court's decision in *State v. Slert*, ___ Wn.2d ___, 334 P.3d 1088, 1092 (2014). We follow *Marks* and reject Pittman's challenge here for the same reasons.

### III. TIME FOR TRIAL RULE

In his statement of additional grounds, Pittman contends that his trial did not occur within the time specified by CrR 3.3, requiring dismissal of all the charges against him. Specifically, Pittman contends that the State improperly delayed arraigning him and that multiple continuances to which he objected delayed his trial.[5] Pittman, however, waived any claim of a time for trial rule violation, and we decline to address his claims.

CrR 3.3 requires that a criminal defendant receive a trial within 60 or 90 days of his first appearance unless the defendant waives that time for trial, the trial court otherwise resets the time for trial, or the trial court excludes a period of time from the time for trial calculation. CrR

---

[5] None of the orders granting continuances are in the record designated for appeal, nor are many of the transcripts of proceedings where the trial court granted the continuances. The proceedings that we do have confirm that Pittman signed a time for trial waiver so that he could exercise his right to represent himself and have time to prepare for trial.

9

3.3(b), (c), (e), (f).[6, 7]  If the State fails to try the defendant within the time period required by CrR 3.3, it must dismiss the charges with prejudice.  CrR 3.3(h).  We review claims that a defendant's trial occurred outside the time allowed by this rule de novo.  *State v. Chavez-Romero*, 170 Wn. App. 568, 577, 285 P.3d 195 (2012), *review denied*, 176 Wn.2d 1023 (2013).

CrR 3.3(d)(3) requires the defendant to take specific steps to preserve a claim that his or her trial occurred in an untimely manner.  Specifically,

> [a] party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits.  Such motion shall be promptly noted for hearing by the moving party in accordance with local procedures.  A party who fails, for any reason, to make such a motion shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule.

CrR 3.3(d)(3).  The motion for a trial within the period set by CrR 3.3 must be made in writing.  *Chavez-Romero*, 170 Wn. App. at 581.

The record shows no written motion from Pittman requesting a trial in accordance with CrR 3.3.  The record also shows no hearing noted for any such motion.  Pittman failed to preserve his time for trial challenge, and CrR 3.3(d)(3) requires that we refrain from addressing the merits of his claim.[8]

---

[6] Whether trial is required within 60 or 90 days depends on whether the defendant spends the pretrial period in custody.  CrR 3.3(b)(1)-(4).

[7] The trial court may exclude a period of time from the time for trial calculation for competency proceedings, proceedings on unrelated charges, continuances, the dismissal of charges without prejudice, the disposition of a related charge, the defendant's detention in a foreign or federal jail or prison, juvenile proceedings, certain unavoidable or unforeseen circumstances, or the recusal of the assigned judge.  CrR 3.3(e).

[8] Pittman's time for trial claim also makes allegations of prosecutorial vindictiveness.  No evidence in the record supports Pittman's allegations that the prosecutor threatened to punish him with additional charges unless he pleaded guilty or that the prosecutor actually did add

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Pittman contends that his attorney rendered ineffective assistance by failing to call an expert to support a diminished capacity defense.[9]  We disagree.

Both the state and federal constitutions guarantee criminal defendants the right to effective representation by their counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014).[10, 11]  We review the constitutional sufficiency of a defendant's representation using the federal test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *Grier*, 171 Wn.2d at 32.  To obtain relief under *Strickland*, the defendant must show both that counsel performed deficiently and that this deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687.  We review de novo claims of ineffective assistance of counsel as these claims present mixed questions of law and fact. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

The deficient performance prong turns on the legitimacy of defense counsel's tactical choices.  Where the defendant complains about choices that "'can be characterized as legitimate trial strategy,'" we may not find deficient performance. *Grier*, 171 Wn.2d 33-34 (quoting *State*

---

offenses to punish him for his refusal to plead guilty. His claim therefore fails. *State v. Lee*, 69 Wn. App. 31, 35-38, 847 P.2d 25 (1993).

[9] Pittman's diminished capacity claim asserts that his stepfather abused him when he was a child and that the fight with his parents the night of his arrest triggered some manner of impaired volitional control related to memories of that abuse

[10] The relevant portion of the Sixth Amendment of the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

[11] The relevant portion of article I, section 22 of the Washington Constitution provides that "[i]n criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel."

*v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).  However, where "a criminal defendant can

... demonstrat[e] that 'there is no conceivable legitimate tactic explaining counsel's

performance,'" he or she shows deficient performance.  *Grier*, 171 Wn.2d at 33 (quoting *State v.*

*Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Diminished capacity is a "mental disorder" that "impair[s] the defendant's ability to form

the culpable mental state to commit the crime charged."  *State v. Atsbeha*, 142 Wn.2d 904, 914,

16 P.3d 626 (2001).  In the context of RCW 46.61.024(1), the required mental state,

"willfulness," simply means "knowledge" that the police have ordered the defendant to stop.

*State v. Mather*, 28 Wn. App. 700, 702, 626 P.2d 44 (1981).

Pittman rests his ineffective assistance of counsel claim on the psychological evaluation

attached to the defense's sentencing memorandum.  The psychologist opined that Pittman had

"great difficulty conforming his conduct to the requirements of the law" and that this justified a

lenient sentence.  CP at 91.  The psychologist's testimony does not, in any way, suggest that

Pittman could not understand that he was being told to stop, only that he had difficulty in making

himself do so.  Given the failure of the evaluation to show an inability to form the necessary

mental state, case law would have required the trial court to exclude the psychologist's

testimony.  *Atsbeha*, 142 Wn.2d at 920-21; *cf. State v. Gough*, 53 Wn. App. 619, 622-23, 768

P.2d 1028 (1989).  Pittman's counsel did not render deficient performance by declining to call a

psychologist to testify about a diminished capacity defense, which the trial court would have

excluded.  Pittman's ineffective assistance of counsel claim, therefore, must fail.  *Kyllo*, 166

Wn.2d at 862 (we may resolve an ineffective assistance counsel claim on either prong of the

*Strickland* test).

## CONCLUSION

We affirm Pittman's convictions.

Bjorgen, A.C.J.

I concur:

Melnick, J.

JOHANSON, C.J. (concurring) — I concur with the majority opinion in almost all aspects. My disagreement starts with the majority opinion where it declares RCW 46.61.024(1) ambiguous. Majority at 7. In my view, a plain reading of the statute is all that is necessary in order to determine that the charging document adequately informed Leldon R. Pittman of all essential elements of the felony eluding charge.

Where the defendant challenges the sufficiency of the charging document for the first time on appeal, we must then "liberally construe the language of the charging document in favor of validity." *State v. Zillyette*, 178 Wn.2d 153, 161, 307 P.3d 712 (2013). Liberal construction requires that we determine whether "the necessary elements appear in any form, or by fair construction, on the face of the document and, if so," whether "the defendant can show he or she was actually prejudiced by the unartful language." *Zillyette*, 178 Wn.2d at 162 (citing *State v. Kjorsvik*, 117 Wn.2d 93, 105, 812 P.2d 86 (1991)). A charging document must allege all essential elements. *Zillyette*, 178 Wn.2d at 158. An element qualifies as essential if it is required to establish the very illegality of the behavior. *Zillyette*, 178 Wn.2d at 158.

In my view, applying the required liberal construction in favor of validity, the "very illegality" of the felony elude behavior is established by the statutory language "fails or refuses to stop after being given a visual or audible signal to . . . stop." RCW 46.61.024(1). The next sentence that the majority deems ambiguous contains a permissive "may" and a nonexclusive list of the manner of giving the audible or visual signal to stop. The manner of giving the "stop" signal is plainly unnecessary to define the criminality of the offense. This language simply defines various ways an officer is permitted to give the audible or visual signal to stop. Liberal construction requires that we determine whether the necessary elements appear in any form or by fair construction. A plain reading of the statute allows us to simply answer "yes"; Pittman was

14

informed of all essential elements of felony eluding when he was charged with "fails or refuses to . . . stop after being given a visual or audible signal to . . . stop." Clerk's Papers at 12. I would hold that RCW 46.61.024(1) is unambiguous and that the charging document was sufficient.

JOHANSON, C.J.